**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **Triston D. Fowler,** | ) | **Civil Action No.:__________** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **Equifax Information Services, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| ________________________________ | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Triston D. Fowler, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

8. Venue is proper in the Charleston Division because the Plaintiff resides in Dorchester County, and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Triston D. Fowler, is a resident and citizen of the State of South Carolina, Dorchester County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Equifax Information Services, LLC ("Equifax") is a Georgia company

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant Equifax is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and to conduct a reasonable re-investigation of disputed information received from the Plaintiff.

14. The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's credit file, failed to reinvestigate Plaintiff's disputes, and failed to block fraudulent information from Plaintiff's credit report after receipt of a police report. Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to be denied credit and subjected to further damages as set forth herein.

## FACTUAL ALLEGATIONS

15. In September 2024, Plaintiff first became aware that he was the victim of identity theft when Bank of America alerted him that his Social Security number was being used to enroll in a military benefits program.

16. Upon reviewing his credit reports, Plaintiff discovered that someone in Rancho Cucamonga, California, had been using his Social Security number since 2019 to obtain credit and purchase vehicles. As a result of the fraud, Plaintiff's Equifax credit report was reporting his current address as in Rancho Cucamonga, California.

17. On September 18, 2024, Plaintiff did an online dispute with Defendant wherein he disputed two open Navy Federal Credit Union (hereinafter "NFCU") Accounts as fraudulently opened in his name. Plaintiff also disputed two addresses that did not belong to him, including the Rancho Cucamonga, California, address.

18. On September 19, 2024, Plaintiff filed a police report with the Spartanburg Police Department. That same day, Plaintiff also filed an identity theft report with the Federal Trade Commission.

19. On or about October 11, 2024, Defendant provided Plaintiff with its Reinvestigation Results showing that each fraudulently opened NFCU Account was verified as accurate and updated. Accordingly, Defendant continued to report the fraudulent Accounts as belonging to Plaintiff. The Reinvestigation Results also showed that Defendant had "verified" the fraudulent address as Plaintiff's current address. With its Reinvestigation Results, Defendant provided Plaintiff with his updated credit report, wherein Defendant continued to report the disputed, fraudulent address as Plaintiff's *current* address, and

continued reporting two open fraudulent NFCU Accounts, as well as six closed fraudulent NFCU Accounts, as belonging to Plaintiff. While the Accounts were not derogatory accounts, they were still negatively impacting Plaintiff's credit score and ability to obtain credit because one of the Accounts (ending 3147) was a new account with a balance of over $12,000.

20. On or about December 21, 2024, Plaintiff made two telephone disputes with Defendant. The first call lasted seven minutes. The second call lasted nine minutes. During each of these calls, Plaintiff explained to Defendant that someone in California had been using his Social Security number and obtaining credit in his name. Plaintiff again disputed the NFCU Accounts and the incorrect addresses as not his and as fraudulent.

21. Plaintiff never received a response from Defendant regarding his telephone disputes on December 21, 2024.

22. Defendant never performed any reinvestigation of Plaintiff's telephone disputes on December 21, 2024.

23. On or about September 26, 2025, Plaintiff again called Defendant to dispute the fraudulent NFCU Accounts and fraudulent addresses. This call lasted approximately twelve minutes.

24. Plaintiff never received a response from Defendant regarding his telephone dispute on September 26, 2025.

25. Defendant never performed any reinvestigation of Plaintiff's telephone dispute on September 26, 2025.

26. In February 2026, Plaintiff viewed a current copy of his Equifax credit report and,

despite his numerous previous disputes to Equifax, it was continuing to report all eight of the fraudulent NFCU Accounts and the fraudulent addresses as belonging to Plaintiff.

27. On February 12, 2026, Plaintiff filed an online dispute with Defendant again disputing the inaccurate items appearing on his Equifax credit file. Specifically, Plaintiff disputed all of the NFCU Accounts and two addresses appearing on his credit report as fraudulent.

28. On or about February 14, 2026, Defendant sent Plaintiff the results of its reinvestigation into Plaintiff's dispute showing Defendant had deleted the disputed Clement, California address as fraudulent. However, Defendant verified the fraudulent Rancho Cucamonga, California address as belonging to Plaintiff. Accordingly, the fraudulent address continued to be reported as Plaintiff's current address.

29. On or about February 16, 2026, Plaintiff filed another online dispute with Defendant again disputing the fraudulent address appearing on his credit report as his current address.

30. That same day, Defendant mailed the results of its reinvestigation to Plaintiff. In these results, Defendant again stated it had reviewed the disputed fraudulent address in Rancho Cucamonga, California, and verified it belonged to Plaintiff. Accordingly, Defendant continued to report the disputed address as Plaintiff's current address.

31. Plaintiff never received either of Defendant's February 2026 reinvestigation results.

32. After filing his online disputes in February, Plaintiff periodically checked the Equifax portal for updates. On or about March 3, 2026, Plaintiff accessed the Equifax portal and learned that Defendant had mailed both of its February 2026 reinvestigation results to the fraudulent address in Rancho, Cucamonga, California used by the individual

illegally using Plaintiff's social security number. Had Plaintiff not accessed the Equifax portal, he would have never seen Defendant's reinvestigation results.

33. As a result of Defendant's failure to properly investigate Plaintiff's dispute of the fraudulent address, the individual illegally using Plaintiff's social security number received copies of Defendant's reinvestigation results and was wrongfully allowed access to Plaintiff's information.

34. Defendant's February 2026 reinvestigation results indicated that the two open, fraudulent NFCU Accounts had been verified as accurate and updated. Accordingly, the fraudulent NFCU Accounts remained on Plaintiff's Equifax credit report. However, NFCU Account ending 3344 was now reporting as a derogatory Account as it was 30 days past due. Defendant also continued to report the fraudulent address as Plaintiff's current address.

35. In March 2026, Plaintiff accepted a new job in Charleston, South Carolina and needed to relocate as soon as possible.

36. Accordingly, although the fraudulent NFCU Accounts and fraudulent address continued to be reported on Plaintiff's Equifax credit report, on or about March 20, 2026, Plaintiff had no choice but to apply for a mortgage so he could purchase a new home.

37. Plaintiff applied for a mortgage through Rev Federal Credit Union who obtained a copy of Plaintiff's Equifax credit report. At the time Rev FCU obtained Plaintiff's credit report, the NFCU Account ending 3344 was reporting as a derogatory account.

38. On or about March 26, 2026, Plaintiff filed a fourth online dispute with Defendant. In this dispute, Plaintiff disputed the fraudulent address in Rancho Cucamonga, California,

as well as the fraudulent NFCU Accounts.

39. Plaintiff never received a response from Defendant regarding his March 26, 2026, online dispute.

40. On April 17, 2026, Plaintiff received an email from Rev FCU regarding the derogatory NFCU account appearing on his credit report and requesting additional documents regarding the account.

41. Thereafter, Plaintiff accessed the Equifax portal and discovered that on or about April 15, 2026, Defendant had again mailed its Reinvestigation Results to Plaintiff at the fraudulent address in Rancho Cucamonga, California. In these results, Defendant informed Plaintiff the NFCU Account No. *3344 had been deleted from his credit file. The NFCU Account No. *3147 was "verified" as belonging to Plaintiff, but Defendant stated this Account was also "deleted from the credit file." Defendant did not provide any reason why the verified Account was deleted from his credit file.

42. In June 2026, Plaintiff viewed a copy of his current Equifax credit report and discovered that the two NFCU Accounts Defendant had stated it had "deleted," were in fact not deleted. Additionally, the fraudulent address was still being reported as Plaintiff's current address.

43. As Plaintiff's previous online and telephone disputes had been unsuccessful in correcting the errors on his credit report, on June 11, 2026, Plaintiff mailed a dispute letter to Defendant via certified mail. In his letter, Plaintiff specifically informed Defendant that another individual by the name of Triston D. Fowler had been wrongfully using Plaintiff's Social Security number since 2019. Plaintiff informed Defendant that he did not live at the

military address in Rancho Cucamonga, California, listed on his credit report and that he had never been in the military. Plaintiff requested the address be completely deleted from his credit report. Plaintiff also disputed eight NFCU Accounts. Plaintiff specifically informed Defendant that he had never borrowed money from NFCU and that the Accounts were not his accounts. Finally, Plaintiff disputed dozens of soft inquiries as they were done by entities with whom he had never done business. With his dispute letter, Plaintiff included a copy of his driver's license, police report, FTC Affidavit, and a letter from Social Security confirming that it had mistakenly given Plaintiff's Social Security number to a third party.

44. Defendant received Plaintiff's written dispute and supporting documents on June 13, 2026.

45. On June 23, 2026, Plaintiff filed another online dispute of the fraudulent NFCU Accounts and fraudulent address with Defendant.

46. On or about June 24, 2026, Defendant sent Plaintiff a postcard stating the information Plaintiff provided as proof of his identity did not match the information Defendant had on his credit file. Plaintiff was asked to send documentation showing his identification and his current address.

47. On or about June 24, 2026, Defendant sent Plaintiff two separate Reinvestigation Results. In the first set of results, (Confirmation #6175561746), Defendant informed Plaintiff that ten of the inquiries disputed by Plaintiff were not currently reporting on his Equifax credit report. In these Reinvestigation Results, Defendant also informed Plaintiff that seven of the NFCU Accounts were "not currently reporting on [his] Equifax credit

report."

48. In the second Reinvestigation Results sent to Plaintiff on or about June 24, 2026, (Confirmation #6175562547), Defendant informed Plaintiff that the remaining inquiries Plaintiff had disputed were "not currently reporting on [his] Equifax credit report."

49. Defendant did not provide Plaintiff with a copy of his credit report with either of the June 24, 2026, Reinvestigation Results so he could verify that his credit report was reporting correctly.

50. Defendant repeatedly failed to make a reasonable reinvestigation into Plaintiff's disputes.

51. As a result of Defendant's failure to reasonably reinvestigate Plaintiff's disputes, Plaintiff's mortgage and the subsequent closing on Plaintiff's new home was delayed approximately one month, Plaintiff incurred additional out of pocket costs, Plaintiff was forced to expend additional time working to be approved for the mortgage, and Plaintiff was charged a higher interest rate for the mortgage.

52. Upon information and belief, Defendant continues to report false, inaccurate, and fraudulent information on Plaintiff's credit report. Defendant also continues to allow unauthorized third parties access to Plaintiff's credit report.

53. Upon receipt of the ACDV responses from the furnishers of the fraudulent Account information, Defendant simply accepted the furnishers' verifications of the Accounts and did not undertake to perform any investigation of its own.

54. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers'

information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. Equifax Credit Info. Servs.,* 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003) (explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

55. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

56. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

**COUNT ONE**
(Fair Credit Reporting Act)

57. The Plaintiff adopts the averments and allegations of paragraphs 15 through 56 hereinbefore as if fully set forth herein.

58. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA,

15 U.S.C. §1681 *et seq.*, including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

59. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

60. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, a delay in being approved for a mortgage and closing on his home which cost Plaintiff additional out of pocket expenses due to the delay and a higher interest rate, family discord, worry, inability to focus, loss of sleep, time spent repeatedly reaching out to Defendant to dispute the inaccurate Accounts and addresses continuing to report on his credit reports, invasion of privacy due to Defendant sending reinvestigation results to the address used by the third party illegally using Plaintiff's social security number and by allowing unauthorized individuals and entitles access to Plaintiff's credit reports, headaches, irritability, loss of enjoyment of life, physical pain and sickness, frustration, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

61. In addition, the Plaintiff has incurred litigation expenses, costs, and attorney's fees which, but for the acts and omissions of Defendant alleged herein, would not have been

necessary. Plaintiff is entitled to the costs of this action together with his attorney's fees, pursuant to 15 U.S.C. §1681o(a)(2).

**COUNT TWO**
(Fair Credit Reporting Act)

62. The Plaintiff adopts the averments and allegations of paragraphs 15 through 61 hereinbefore as if fully set forth herein.

63. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 *et seq.*, including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); and (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i.

64. Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

65. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

66. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, a delay in being approved for a mortgage and closing on his home which cost Plaintiff additional out of pocket expenses due to the delay and a higher interest rate, family discord, worry, inability to focus, loss of sleep, time spent repeatedly reaching out to Defendant to dispute the inaccurate Accounts and addresses continuing to report on his credit reports, invasion of privacy due to Defendant

sending reinvestigation results to the address used by the third party illegally using Plaintiff's social security number and by allowing unauthorized individuals and entitles access to Plaintiff's credit reports, headaches, irritability, loss of enjoyment of life, physical pain and sickness, frustration, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

67. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

68. In addition, the Plaintiff has incurred litigation expenses, costs, and attorney's fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary. Plaintiff is entitled to the costs of this action together with his attorney's fees, pursuant to 15 U.S.C. §1681n(a)(3).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D. For such other and further relief as the Court may deem just and proper.

*s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**

HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**

Equifax Information Services, LLC
c/o Corporation Service Company - Registered Agent
100 Coastal Drive, Suite 210
Charleston, SC 29492